UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

MARK FITZHENRY, individually
and on behalf of a class of all persons and
entities similarly situated,

    Plaintiffs,

vs.

VIVINT, INC., DSI DISTRIBUTING, INC.
d.b.a. DSI SYSTEMS, and
JOHN DOE CORPORATION

    Defendants.

Case No. 2:21-cv-00789-DCN

# CLASS ACTION COMPLAINT

## Preliminary Statement

1. Plaintiff Mark Fitzhenry brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

2. Mr. Fitzhenry alleges that Vivint, Inc. ("Vivint") commissioned pre-recorded telemarketing calls to his cellular telephone number and to other putative class members without their prior express written consent. The calls were sent pursuant to an agreement between Vivint and DSI Distributing, Inc. ("DSI").

3. Mr. Fitzhenry and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fitzhenry brings this action on behalf of a

proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Vivint.

4. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Mark Fitzhenry resides in Charleston County, South Carolina.

6. Defendant Vivint, Inc. is a Utah corporation with its principal place of business in Provo, Utah.

7. Defendant DSI Distributing, Inc. d.b.a DSI Systems is an Indiana corporation with its principal place of business in Dallas, TX. DSI Systems was engaged by Vivint to provide telemarketing services into this District and throughout the nation.

8. Defendant John Doe Corporation, which failed to identify itself on the call to Mr. Fitzhenry, is a telemarketing vendor for Vivint and DSI and contracted with DSI to originate new customers for Vivint and DSI through telemarketing. John Doe Corporation was engaged to provide telemarketing services into this District and throughout the nation.

**Jurisdiction & Venue**

9. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the call to Mr. Fitzhenry—occurred in this District.

## Statutory Background

The TCPA

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The TCPA makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

13. These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory*

*Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

The SCTPPA

15. On May 18, 2018 the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

16. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number unless:

> At the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made and promptly disclose to the consumer the following information:
>
> > (1) the telephone number and address at which the telephone solicitor may be contacted; and
> > (4) the option to be added to the telephone solicitor's in-house "do not call" list if the consumer requests being added to such list, confirmation that the consumer's name and telephone number will be placed on such list.

*See* S.C. Code § 37-21-40.

17. The SCTTPA also sets forth, *inter alia*, certain requirements for telephone solicitations lacking a live solicitor, including that the telephone solicitor play a prerecorded identification and opt-out message that is limited to disclosing that the call was for telephone solicitation purposes and states the name and telephone number of the person on whose behalf the telephone solicitation call is being made, and a telephone number for such person that permits the consumer to make a do-not-call request during regular business hours, and an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the consumer to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism. *See* S.C. Code § 37-21-60.

18. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

The Growing Problem of Automated Telemarketing

19. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

20. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

21. Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

22. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

23. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited October 17, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

24. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

**Factual Allegations**

25. Mr. Fitzhenry is a "person" as defined by 47 U.S.C. § 153(39).

26. Mr. Fitzhenry's telephone number, (843) 763-XXXX, is assigned to a cellular telephone service.

27. On February 5, 2021, Mr. Fitzhenry received a pre-recorded call on his cellular telephone from DSI's vendor, John Doe Corporation, on behalf of DSI and Vivint.

28. The call was made with an ATDS, as that term is defined by the TCPA.

29. Mr. Fitzhenry knew the call was made with an ATDS because:

    a. The call used a pre-recorded voice;

    b. The call came from a spoofed caller ID;

    c. The call was commercial in nature; and

    d. Right before the call connected with a live individual there was a distinctive "bloop" sound associated with an automated dialer.

30. Furthermore, the number that displayed on the Plaintiff's phone was (843) 412-7525, a non-working number.

31. The use of a "spoofed" or non-working Caller ID number is further indication that an ATDS was used, as it typically takes an automated calling program to choose the Caller ID used to make the calls.

32. When Mr. Fitzhenry connected with a live individual, he was informed that he was speaking with "Michael," who did not give his last name, and proceeded to make a promotional offer about a home security system.

33. The individual was not identified at the outset of the call by providing his full name, number and address and the entity on whose behalf he was calling and did not state at the outset of the call that Mr. Fitzhenry had the option to be added to the telephone solicitor's in-house "do not call" list.

34.     A live person was not available to speak with Mr. Fitzhenry answering the call within two seconds of the completed greeting and no automated, interactive voice and/or key press-activated opt out mechanism was played.

35.     To learn the identity of the company calling him, Mr. Fitzhenry engaged with the telemarketers and confirmed their information.

36.     "Michael" confirmed Mr. Fitzhenry's information and made him a specific promotional offer. He then transferred Mr. Fitzhenry to "Peter for Vivint Home Security."

37.     After asking Mr. Fitzhenry additional qualification questions, "Peter for Vivint Home Security" transferred Mr. Fitzhenry to a "specialist of Vivint Home Security."

38.     "Tanner [Starkey] with Vivint" came on the line. Mr. Starkey eventually confirmed that the company that transferred the call to Vivint was a "partner" of Vivint's and that the promotional offer Mr. Fitzhenry had been offered was being offered by Vivint.

39.     Mr. Starkey also confirmed that he was a Vivint employee.

40.     Vivint sent Mr. Fitzhenry an email confirming that the call was made on Vivint's behalf.

41.     Mr. Fitzhenry did not give Vivint or DSI or John Doe Corporation consent to call him.

42.     Mr. Fitzhenry and others who received these calls were temporarily deprived of legitimate use of their phones and their privacy was invaded.

**Vivint's Liability for DSI's and John Doe's Conduct**

43.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. In fact, the Federal Communication Commission has instructed that sellers such as Vivint may not avoid liability by outsourcing telemarketing to third parties, such as the co-defendants:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

47. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

48. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

49. DSI is a Vivint Authorized Dealer.

50. Vivint is liable for the telemarketing calls that were initiated by DSI and placed through John Doe Corporation.

51. Vivint hired DSI to originate new business using automated telemarketing calls.

52. DSI then hired John Doe Corporation as a subcontractor to place those calls exclusively for DSI and Vivint.

53. Vivint could have restricted DSI and John Doe Corporation from using automated telemarketing, but it did not.

54. DSI could have restricted John Doe Corporation from using automated telemarketing, but it did not.

55. Vivint also accepted the benefits of DSI's illegal telemarketing by accepting live transfers of leads directly from DSI and John Doe Corporation despite the fact that those leads were generated through illegal telemarketing.

56. Vivint permitted DSI and John Doe Corporation to place calls using Vivint's name as the provider of services without mentioning DSI's name or John Doe Corporation's name during the call.

57. Vivint had absolute control over whether, and under what circumstances, it would accept a customer.

58. Vivint determined the parameters and qualifications for customers to be transferred to a live Vivint representative and required DSI to adhere to those requirements. DSI in turn required John Doe Corporation to adhere to those requirements and provided John Doe Corporation training on Vivint's requirements.

59. Vivint determined the geographic areas DSI and John Doe Corporation were allowed to place calls to.

60. Vivint knew (or reasonably should have known) that DSI and John Doe Corporation were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

61. Likewise, DSI knew (or reasonably should have known) that John Doe Corporation was violating the TCPA on behalf of DSI and Vivint but failed to take effective steps within its power to force the telemarketer to cease that conduct.

62. Indeed, DSI and Vivint were both previously sued by multiple plaintiffs alleging DSI violated the TCPA by the very same conduct Plaintiff alleges here, making automated calls without consent, on Vivint's behalf. Yet Vivint continued to accept new business from DSI and failed to "take effective steps within its power to force the telemarketer to cease that conduct."

63. DSI also failed to take effective steps despite those plaintiffs' claims to force its vendors, including John Doe Corporation, to cease their unlawful conduct.

64. By having DSI initiate the calls on its behalf to generate new business, Vivint "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

65. DSI and John Doe Corporation transferred customer information directly to Vivint. Thus, the company that Vivint hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

66. DSI and John Doe Corporation also had the right to bind Vivint in contract, a hallmark of agency.

67. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

68. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

69. The proposed classes are tentatively defined as:

Automated Call Class:

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

SCTPPA Class:

All persons with a South Carolina area code, and to whom, Defendants, or someone on their behalf, placed at least one call by or at the direction of Defendants to promote the sale of Vivint products or services where (a) the first and last name of the caller was not provided at the outset of the call; and/or (b) the entity on behalf of which the call was being made was not provided at the outset of the call; and/or (c) the number and address of the caller was not provided at the outset of the call; and/or (d) the caller did not disclose that the call recipient had the option to be added to the telephone solicitor's in-house "do not call" list; and/or (e) a live person was not available to speak with the consumer answering the call within two seconds of the completed greeting and no prerecorded identification and opt-out message was played; and/or (f) a live person was not available to speak with the consumer answering the call within two seconds of the completed greeting and no automated, interactive voice and/or key press-activated opt out mechanism was played; and (g) at any time in the period that begins three years before the date of the filing of this Complaint to trial.

70. The Plaintiff is a member of both classes.

71. Excluded from the classes are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

72. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

73. Based on the automated nature of telemarketing campaigns, there are likely thousands of class members. Individual joinder of these persons is impracticable.

74. There are questions of law and fact common to Plaintiff and the proposed class, including:

   a. Whether the Defendants used an ATDS to send telemarketing calls;

   b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether the Defendants' TCPA violations were negligent, willful, or knowing;

   d. Whether the Defendants' SCTPPA violations were willful; and

   e. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

75. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

76. Plaintiff is an adequate representative of the classes because his interests do not conflict with the classes' interest, he will fairly and adequately protect the classes' interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

77. The Defendants' actions are applicable to the classes and to Plaintiff.

78. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

79. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

80. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting autodialer calls to cell phones

81. The Defendants violated the TCPA by (a) initiating a telemarketing call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service without prior express written consent, or (b) by the fact that others caused the initiation of those calls on their behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

82. The Defendants' violations were willful or knowing.

83. The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendants from using an automatic telephone dialing system, absent an emergency circumstance or prior express written consent.

### Count Two:
### Violation of the SCTPPA

84. The Defendants violated the SCTPPA by initiating a telemarketing call to the Plaintiff, a South Carolina resident, where (a) the first and last name of the caller was not provided at the outset of the call; and/or (b) the entity on behalf of which the call was being made was not provided at the outset of the call; and/or (c) the number and address of the caller was not provided at the outset of the call; and/or (d) the caller did not disclose that the call

recipient had the option to be added to the telephone solicitor's in-house "do not call" list; and/or (e) a live person was not available to speak with the consumer answering the call within two seconds of the completed greeting and no prerecorded identification and opt-out message was played; and/or (f) a live person was not available to speak with the consumer answering the call within two seconds of the completed greeting and no automated, interactive voice and/or key press-activated opt out mechanism was played.

85. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. *See* § 37-21-80.

## Relief Sought

Plaintiff requests the following relief:

A. That the Court certify the proposed classes;

B. That the Court appoint Plaintiff as class representative;

C. That the Court appoint the undersigned counsel as counsel for the class;

D. That the Court enter a judgment permanently enjoining the Defendant from using an automatic telephone dialing system, absent an emergency circumstance,

E. That the Court enter a judgment awarding Plaintiff and all class members statutory of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

F. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA;

G.     That the Court enter an order awarding the Plaintiff reasonable attorneys' fees and costs;

H.     That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

        DAVE MAXFIELD, ATTORNEY, LLC

        By: *s/ David A. Maxfield*
            David A. Maxfield
            Federal Bar No. 6293
            Post Office Box 11865
            Columbia, SC 29211
            (803) 509-6800

            PARONICH LAW, P.C.
            Anthony I. Paronich
            *Subject to Pro Hac Vice*
            350 Lincoln Street, Suite 2400
            Hingham, MA 02043
            (508) 221-1510

            MURRAY MURPHY MOUL +
            BASIL LLP
            Brian K. Murphy
            *Subject to Pro Hac Vice*
            Jonathan P. Misny
            *Subject to Pro Hac Vice*
            1114 Dublin Road
            Columbus, OH 43215
            (614) 488-0400

        *Attorneys for Plaintiff*

        March 16, 2021