## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| MARK FITZHENRY, *individually and on behalf of a class of all persons and entities similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:21-cv-00789-DCN |
| vs. | ) ) | **ORDER** |
| VIVINT, INC., RS&I, INC. and JOHN DOE CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

The following matter is before the court on defendant Vivint Inc.'s ("Vivint") motion to dismiss or, in the alternative, stay or transfer the case, ECF No. 23. For the reasons set forth below, the court grants the motion and transfers the action to the District of Utah.

## I.  BACKGROUND

On February 5, 2021, plaintiff Mark Fitzhenry ("Fitzhenry") allegedly received a prerecorded or automatic telephone dialing system ("ATDS") telemarketing call on his cell phone. According to Fitzhenry, Vivint commissioned defendant RS&I, Inc. ("RS&I") to make the telemarking calls to the cell phone numbers of Fitzhenry and putative class members without their prior express written consent. RS&I in turn hired an unidentified corporation, "John Doe Corporation" (together with Vivint and RS&I, "defendants") to place these calls. Fitzhenry filed the instant action on March 19, 2021, alleging violations of the automated calling provision in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1) (the "Automated Calling Provision"),

and numerous provisions of the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code Ann. § 37-21-10 et seq.  ECF No. 1, Compl.

Vivint identifies a putative class action filed in the District of Utah as substantially similar to the instant action.  That action, Perrong v. Vivint, Inc., No. 2:19-cv-00568 (D. Utah 2019) ("Perrong"), was filed on August 14, 2019 against Vivint and DSI Distributing, Inc. ("DSI").[1]  The plaintiffs in Perrong bring various claims under the TCPA and its implementing regulations in connection with their alleged receipt of telemarketing calls from, or on behalf of, Vivint without their prior express consent. These claims include (1) initiating multiple solicitation calls within a twelve-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (the "Do Not Call Provision"); (2) failing to implement the required internal procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of the entity, in violation of 47 C.F.R. § 64.1200(d) (the "Internal Procedures Provision"); and (3) initiating automated solicitation calls to telephone numbers, in violation of the Automated Calling Provision.  Counsel for the plaintiffs in Perrong also represent Fitzhenry and the putative classes in this action.

On June 7, 2021, Vivint filed a motion to dismiss or, in the alternative, stay or transfer the case.  ECF No. 23.  On June 21, 2021, Fitzhenry responded in opposition, ECF No. 27, and on June 28, 2021, Vivint replied, ECF No. 30.[2]  On August 19, 2021,

---

[1] DSI was originally a defendant in the instant action but Fitzhenry substituted RSI for DSI pursuant to his first amended complaint.  ECF No. 18.  In both actions, plaintiffs allege that DSI made telemarketing calls on Vivint's behalf.

[2] Vivint additionally filed a motion to stay the proceedings, including discovery, until the court's resolution of its motion to dismiss.  ECF No. 24.  Fitzhenry opposes the

the court held a hearing on the motion.  ECF No. 31.  As such, the motion has been fully briefed and is now ripe for review.

## II.  DISCUSSION

Defendants argue that venue is improper pursuant to the "first-to-file rule."  The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed."  Allied–Gen. Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n. 1 (4th Cir. 1982) (citing Carbide & Carbon Chems. Corp. v. United States Indus. Chems., Inc., 140 F.2d 47, 49 (4th Cir. 1944)).  To determine whether the first-to-file rule applies, courts consider: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake.  Victaulic Co. v. E. Indus. Supplies, Inc., 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013); Condon v. Haley, 21 F. Supp. 3d 572, 581 (D.S.C. 2014) (emphasizing that "the most basic aspect of the first to file rule is that it is discretionary" and that "the decision and the discretion belong to the district court").

"The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis," Barr v. EQT Prod. Co., 2015 WL 2452635, at *3 (N.D. W.Va. May 22, 2015), because the Fourth Circuit "has no unyielding first-to-file rule." CACI Intern., Inc. v. Pentagen Techs. Int'l., 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (unpublished).  Exceptions to the rule are common when justice or expediency requires or when the balance of convenience sways in favor of the later filed

---

motion to stay.  ECF 28.  Because the court grants the instant motion, it finds Vivint's motion to stay discovery moot.

suit.  The Learning Network, Inc. v. Discovery Communications, Inc., 11 Fed. Appx.

297, 300-301 (4th Cir. 2001); Samsung Elecs. Co. v. Rambus, Inc., 386 F.Supp.2d 708,

724 (E.D. Va. 2005).  The principle is a "judge-made tool" designed to promote "judicial

and litigant economy, and the just and effective disposition of disputes."  Scardino v.

Elec. Health Res., LLC, 2016 WL 1321147, at *3 (D.S.C. Apr. 5, 2016).  Courts applying

the principle typically stay or transfer the later-filed action.

 Here, there is no dispute that the Perrong action was filed first.  Perrong was filed

on August 14, 2019, while this action was filed on March 19, 2021.  Thus, Perrong is the

first-filed action.

 The court next determines whether the parties are substantially similar.  Fitzhenry

argues that the only party in common in both actions is Vivint.  Fitzhenry first points out

that the named plaintiffs are different in each action.  This difference is insignificant.  In

applying the first-to-file rule in class actions, courts agree that the relevant comparison is

the putative classes, not the named plaintiffs.  Ross v. U.S. Bank Nat'l Ass'n, 542 F.

Supp. 2d 1014, 1020 (N.D. Cal. 2008) ("In a class action, the classes, and not the class

representatives, are compared."); Russo v. Eastwood Constr. Partners, LLC, 2021 U.S.

Dist. LEXIS 51188, at *12 (D.S.C. Mar. 18, 2021) (finding the parties substantially

similar when the proposed classes were identical, notwithstanding different named

plaintiffs).  "If the first-to-file rule were to require a strict comparison only of the named

plaintiffs in the two actions, the rule would almost never apply in class actions.  This

result would be in direct conflict to the purposes of the first-to-file rule."  Peterson v.

Aaron's, Inc., 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) (quoting Sheehy v. Santa

Clara Valley Transp. Auth., 2014 U.S. Dist. LEXIS 77412, at *2 n.12 (N.D. Cal. Jun. 4,

2014)).  Therefore, the court is unmoved by the fact that the named plaintiffs in each action differ.

Fitzhenry further argues that the putative classes are not substantially the same because, unlike Perrong, the instant action includes a putative class for persons who received calls in violation of the SCTPPA, limits the class related to the Automated Calling Provision to persons who received calls from RS&I, and does not include a class related to the Do Not Call Provision or Internal Procedures Provision.  These differences among the classes are not sufficient to bring this matter out of the ambit of the first-to-file rule.  "[E]xact identity is not required to satisfy the first-to-file rule.  The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters."  Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc., 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) (quoting PETA, Inc. v. Beyond the Frame, Ltd.,  2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011)).  Both this action and Perrong seek to represent a class of persons who received automated telemarketing calls from Vivint or on its behalf in violation of the Automated Calling Provision.  Moreover, the automated call class in this action is wholly subsumed by the Perrong automated call class.  Specifically, the automated call class in this action is limited to those persons who received Vivint telemarketing calls from RS&I or an entity acting on its behalf.  The automated call class in Perrong more broadly includes persons who received a telemarketing call from Vivint, DSI, or a third party acting on behalf of either.  As alleged by Fitzhenry, RS&I was one such third party acting on behalf of Vivint.  Therefore, any automated call class member in this action would also be an automated call class member in Perrong.  Indeed, Fitzhenry conceded this

point during the hearing on the motion.  Because both classes "seek to represent at least some of the same individuals," they are substantially similar.  Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013).  This party similarity is not defeated simply because either action includes an additional class of persons— particularly when those persons likewise received telemarketing calls on behalf of Vivint but simply allege that the calls violate the SCTPPA, Do Not Call Provision, or Internal Procedures Provision instead of, or in addition to, the Automated Calling Provision.

The same is true with respect to the defendants in the two actions.  Vivint is a defendant in both this action and Perrong, and the corporation whose services were promoted via the complained-of calls, according to the plaintiffs in both actions.  DSI is a defendant only in Perrong, and RS&I and John Doe Corporation are only defendants in this action.  However, plaintiffs in both actions allege that these entities were acting on Vivint's behalf in making the telemarketing calls at issue.  "That similarity, not identity, of parties is the relevant consideration prevents a litigant from adding a party simply to defeat application of the first to file doctrine."  Pac. Coast Breaker, 2011 WL 2073796, at *3 (citing Bashiri v. Sadler, 2008 WL 2561910 at *2 (D. Ariz. 2008)).  That concern is particularly applicable to this case, where Fitzhenry amended his complaint on June 24, 2021 to substitute RS&I for DSI as a defendant, presumably to artificially distinguish the parties from Perrong.  Fitzhenry's inclusion of distinct defendants in this case, particularly a defendant serving the same role as the distinct defendant in Perrong, does not render the two actions too dissimilar to apply the first-to-file rule.  See Hill v. Robert's Am. Gourmet Food, LLC, 2013 WL 3476801, at *4 (N.D. Cal. July 10, 2013)

("The fact that there is an additional defendant in this case does not negate the substantial similarity between the actions.") (emphasis in original).

The court further finds the issues at play in both actions substantially similar. The plaintiffs in both bring the litigation in connection with "illegal telemarketing calls [received] from or on behalf of Vivint." ECF No. 18, Amend. Compl. ¶ 3; Perrong, Am. Compl. ¶ 6. In other words, the two suits arise from the same underlying facts: telemarketing calls made by Vivint or on its behalf. The plaintiffs in both actions bring claims related to those calls under the TCPA Automated Calling Provision. These claims require resolution of the same factual issues: whether Vivint, or entities on its behalf, made calls to individuals' telephone numbers from an ATDS, prerecorded, or artificial voice without their prior written consent. Therefore, there are overlapping factual and legal issues in both cases.

Fitzhenry essentially argues that the issues are not the same for three reasons, none of which the court finds convincing. First, Fitzhenry argues that he asserts a claim for numerous violations of the SCTPPA, and no claims under the SCTPPA or any similar state law have been asserted in Perrong. Fitzhenry's inclusion of the SCTPPA claim does not defeat the similarity of the actions. "[F]or the first-to-file rule to apply, courts need not find a precise overlap." Fisher v. Rite Aid Corp., 2010 WL 2332101, at *2 (D. Md. June 8, 2010). As the District of New Jersey has explained, "in a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states." Catanese v. Unilever, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). If courts found insubstantial overlap solely because claims were asserted under different state laws, "the purpose of the rule would be defeated. There would be nothing

to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law." Id. Accordingly, "whether cases are substantially similar is a question of substance rather than form . . . [a]s long as the underlying facts are the same . . . the fact that the two complaints allege violations of different . . . laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." Askin v. Quaker Oats Co., 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012)). Stated differently, overlapping factual matter is key; exact identity of claims is not required. Hubbard v. Papa John's Int'l, Inc., 2019 WL 6119242, at *5 (W.D. Ky. Nov. 18, 2019) ("The presence of additional issues does not necessarily preclude a finding of substantial similarity where 'the core of the claim is the same.'") (internal citation omitted); see eNom, Inc. v. Philbrick, 2008 WL 4933976, at *2 (W.D. Wash. Nov. 17, 2008) ("Despite the additional claim in this case, the factual and legal issues in the two cases are overwhelmingly similar."). Fitzhenry's SCTPPA claim arises from the same nucleus of operative facts as both his TCPA claim and the Perrong action—namely automated telemarketing calls made by Vivent or on its behalf. That the SCTPPA has "distinct requirements not found in the TCPA regarding certain disclosures that must be provided to South Carolina consumers" during those calls, ECF No. 27 at 8, is not dispositive. See Walker v. Progressive Cas. Ins. Co., 2003 WL 21056704, at *3 (W.D. Wash. May 9, 2003) ("Given that the first-to-file rule requires only a substantial similarity between the claims, this slight difference between federal and state law does not prevent application of the rule."). Because Fitzhenry's SCTPPA claim is merely a different vehicle to establish the illegality of the same underlying telemarketing calls, the court finds the issues substantially similar. Worthington v. Bayer Healthcare, LLC, 2012 WL 1079716,

at *6 (D.N.J. Mar. 30, 2012) ("Finding an insubstantial overlap because of the fact that the claims are asserted under different state laws would defeat the judicial efficiency rationale undergirding the first-filed rule."); Wallerstein, 967 F. Supp. 2d at 1297–98 (finding two lawsuits substantially similar, even though the second-filed action included two distinct New York law claims in addition to California law claims that overlapped with the first-filed action); Caraboolad v. Sun Tan City, LLC, 2020 WL 423393, at *5 (W.D. Ky. Jan. 27, 2020) (finding substantial overlap of the issues and noting that, "While the SCTPPA was not raised in the Florida Action, the alleged conduct, theory of liability, and relief sought are the same for the SCTPPA claim as they are for the Florida Action.").

Second, Fitzhenry argues that the remedies sought in the actions are different. Fitzhenry explains that, although the operative complaint in Perrong seeks damages for telephone calls, the plaintiffs intend to pursue only injunctive relief with respect to those calls because they were "unable to obtain call detail records" from certain vendors during discovery.[3]  ECF No. 27 at 11.  Here, in contrast, Fitzhenry pursues damages as well as an injunction.  The court is unmoved by this argument.  Fitzhenry may very well hit the same discovery roadblocks with RS&I and, like the plaintiffs in Perrong, subsequently abandon his request for damages and seek an injunction only.  Even if he does not, the first-to-file rule is not limited to actions where the remedy sought is the same.  See, e.g., Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (holding

---

[3] Fitzhenry submits a declaration from plaintiffs' counsel in Perrong regarding their intent to pursue only injunctive relief with respect to the allegedly illegal calls. ECF No. 27-2.  The Perrong plaintiffs still intend to pursue damages with respect to the allegedly illegal texts received.

that the first-to-file rule applied where two actions differed only as to the remedy sought, but the underlying legal issues were the same); Isle Capital Corp. v. Koch Carbon, Inc., 2006 U.S. Dist. LEXIS 24866, *3 (N.D. Cal. Mar. 28, 2006) (holding "the form of relief sought does not determine the 'similitude' of the issues"); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc., 2012 U.S. Dist. LEXIS 112346, at *13 (N.D. Cal. Aug. 9, 2012) (applying the first-to-file rule even though the first action sought monetary damages and declaratory relief and the second action only sought declaratory relief).  Therefore, the Perrong plaintiffs' purported pursuit of only injunctive relief does not preclude a finding of substantial similarity with this action.

Third, Fitzhenry argues that discovery in Perrong to date has focused on only two Vivint vendors, DSI and ENT America, and their subvendors, whereas here discovery will focus on RS&I.  ECF No. 27 at 10.  In arguing that Perrong discovery did not include RS&I, Fitzhenry cites Vivint's discovery response objecting to the Perrong plaintiffs' request to identify all of Vivint's telemarketing vendors "because it seeks information regarding Vendors not named as defendants or alleged to have engaged in any of the conduct that forms the basis of the Amended Complaint."  ECF No. 27-1. Vivint disputes Fitzhenry's contention that discovery in Perrong has not involved RS&I. Moreover, Vivint points out that the Perrong plaintiffs have not taken any steps to narrow or redefine their complaint or putative class definitions to exclude persons who received calls from RS&I and its subvendors.  As currently defined, the putative automated call class definition in Perrong includes persons who received calls from any third party acting on Vivint's behalf, including RS&I.  See Perrong, ECF No. 86, Amend. Compl.

¶ 118.[4] (emphasis added) (noting that the class includes all person to whom "defendants and/or a third party acting on its behalf" made the telemarketing calls).  Therefore, it is clear to the court that the scope of discovery in <u>Perrong</u> could include RS&I.  The representations from counsel for the <u>Perrong</u> plaintiffs that they have not and will not pursue such discovery are inapposite.[5]  In any event, the court has already found the parties in both actions substantially similar, notwithstanding their inclusion of distinct defendants.  Discovery in each action will naturally focus more heavily on the defendants present in each case.  The court will not find the issues dissimilar simply because discovery in <u>Perrong</u> has focused less on RS&I and more on its own named defendants— defendants that played the same role as RS&I in initiating calls on Vivint's behalf.  To do so would undermine well-established law, discussed <u>supra</u>, that inclusion of an additional defendant does not negate the substantial similarity of two actions.  <u>See, e.g.</u>, <u>Hill</u>, 2013 WL 3476801, at *4.  Again, under the first-to-file rule, "the issues in both cases [] need not be identical, only substantially similar," and courts must look at "whether there is 'substantial overlap' between the two suits."  <u>Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.</u>, 787 F.3d 1237, 1240–41 (9th Cir. 2015).  Such overlap exists here, and the court therefore finds the issues presented in <u>Perrong</u> and this action substantially the same.

---

[4] The court may take judicial notice of the public docket.  <u>See</u> Fed. R. Evid. 201(b); <u>Whitt v. Wells Fargo Fin., Inc.</u>, 664 F. Supp. 2d 537, 542 (D.S.C. 2009) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

[5] Although class discovery has closed, the deadline for merits discovery in <u>Perrong</u> is December 15, 2021.  <u>Perrong</u>, ECF No. 128 at 2.  To the extent the <u>Perrong</u> plaintiffs have not vigorously pursued discovery related to RS&I, they still have the opportunity to do so during merits discovery.

Although all of the factors weigh in favor of application of the first-to-file rule, because the doctrine is discretionary, a court may decline to apply the rule if the "balance of convenience" favors the second-filed action. Elliott Mach. Corp. v. Mod. Welding Co., 502 F.2d 178, 180 (4th Cir. 1974); see Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008); Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 901 (D. Md. 2008). Neither party has argued or made a showing that that the balance of convenience favors the instant action. Therefore, the court will apply the first-to-file rule in favor of Perrong.

Because this case is within the ambit of the first-to-file rule, the court in its discretion must determine whether transfer, stay, or dismissal of this action would best serve the interests of justice. See Cox v. Air Methods Corp., 2018 WL 2437056, at *5 (S.D. W.Va. May 30, 2018). Dismissal of the present case is not appropriate. Indeed, "[c]ourts rarely dismiss claims pursuant to the first-to-file rule, preferring instead to transfer those claims to the court where the similar claims were first filed." Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., 679 F. Supp. 2d 1287, 1299 (D. Kan. 2010) (citing Steavens v. Electronic Data Sys. Corp., 2008 WL 5062847, at *2 (E.D. Mich. Nov. 25, 2008) and Elite Physicians Servs. v. Citicorp Credit Servs., 2007 WL 1100481, at *5 (E.D. Tenn. Apr. 11, 2007)). Courts have particularly found transfer preferable to dismissal where, as here, the two actions are substantially similar, but not identical. See, e.g., Herer v. Ah Ha Pub., LLC, 927 F. Supp. 2d 1080, 1091 (D. Or. 2013); Intellor Grp., Inc. v. Cicero, 2019 WL 1643549, at *8 (D. Md. Apr. 16, 2019) (transferring instead of dismissing the second-filed action where it involved claims not included in the first-filed action). The presence of Fitzhenry's SCTPPA claim counsels

against dismissal of this action, as doing so would, at least temporarily, deprive Fitzhenry the opportunity to litigate related, but distinct, claims.  Dismissal would likewise deprive Fitzhenry of the opportunity to pursue his damages remedy related to the Automated Calling Provision.  Therefore, the court will not dismiss the action.  See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 963 (N.D. Cal. 2008) ("Dismissal is proper where the court of first filing provides adequate remedies.").

Between a stay and transfer, the court finds that a transfer best serves the interests of justice.  Notably, "the Fifth Circuit has indicated that transfer is always the 'proper course' because a second-filed court should allow a first-filed court to determine the fate of the second action."  Cherokee Nation v. Nash, 724 F. Supp. 2d 1159, 1172 (N.D. Okla. 2010) (citing Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. 1999) (finding that the district court erred in dismissing instead of transferring the suit)).  Fitzhenry argues that a stay would unnecessarily delay resolution of his claims and risk the loss of evidence necessary to prove his claims, and the court agrees.  Moreover, as the court explains below, considerations of judicial efficiency and consistency favor transfer.

Vivint argues that "[t]ransfer should be the last resort here given the procedural postures of the two cases."  ECF No. 23 at 12 n. 15.  To be sure, Perrong has been pending approximately one year and six months longer than the instant action, and class discovery in Perrong has closed.  However, Perrong has not progressed so far as to moot the efficiency gains of a transfer.  Notably, merits discovery does not close until January 14, 2022, the putative classes in Perrong have not yet been certified, and a trial date has not yet been set.  In light of the COVID-19 pandemic and the ensuing backlog of jury trials faced by federal district courts across the nation, it is unlikely that the Perrong trial

13

will be conducted in short order. Therefore, it remains possible that the cases could be tried together. Jimenez v. Kohl's Dep't Stores, Inc., 2020 WL 4735544 (D. Mass. Aug. 14, 2020) (noting that although the first-filed action "may be at a more advanced stage than this litigation," "efficiency and equity considerations favor, rather than cut against, transfer").

Moreover, this court is not ordering consolidation of the two cases at this juncture. It is simply transferring action to the district already familiar with the underlying facts and issues. That court can best determine whether the two cases should proceed separately. Persepolis Enter. v. United Parcel Serv., Inc., 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007) ("Plaintiff's rights are best preserved by transferring the case to the Northern District of Alabama, where the court that already has a deep familiarity with the facts of [the first-filed action] is in a better position to determine whether the two cases should proceed separately."). Even if the two actions proceed separately, it is "preferable that one court assess the factors that point to factual and legal overlap and sort out the class action issues that will arise in each of the related actions. In that way, the rights of all potential class members can be fully protected and the responsibility of defendants vis a vis the putative class members can be properly identified and allocated." Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006). Because the essential claims here and in Perrong are so similar, a single district court hearing each of the related actions will be able to ensure that all persons adversely affected by the complained-of practices will be protected, and that none of their claims will fall through the cracks that may exist between the classes that ultimately are certified. See id. Moreover, given the significant factual and legal overlap, it is

preferable for one court to address both actions to minimize the risk of inconsistent judgments and unnecessary duplication of efforts.  Also given that overlap, a single district court can better oversee any settlement processes that may arise in either or both suits.  See id.; Jimenez, 2020 WL 4735544 (D. Mass. Aug. 14, 2020) ("[T]he settlement process can be complicated and made burdensome, and even frustrated, if two courts are attempting to deal with the same subject matter) (internal quotation and citation omitted).  Therefore, the court is unmoved by Vivint's arguments against transfer.

　　　Fitzhenry likewise opposes transfer, arguing that "the District of Utah's jurisdiction over RS&I, as an Idaho corporation with its principal place of business in Idaho, is questionable."  ECF No. 27 at 12 n. 2.  The court is not convinced that the District of Utah would lack personal jurisdiction over RS&I.  As Fitzhenry alleges in his amended complaint, "telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers en masse."  Am. Compl. ¶ 3.  Moreover, Fitzhenry alleges that "RS&I Systems was engaged by Vivint to provide telemarketing services into this District and throughout the nation."  Id. at ¶ 7 (emphasis added).  The court has no reason to believe that RS&I excluded Utah in its nationwide telemarketing efforts such that no Utah residents would be members of the automated call class.  Therefore, the District of Utah presumably has specific jurisdiction over RS&I to the same extent as this district.

　　　In sum, the court concludes that transfer of the instant action to the District of Utah is the most appropriate, efficient, and just course of action.

### III.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion and transfers the

matter to the District of Utah.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**August 20, 2021
Charleston, South Carolina**

16